UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EMMANUEL ANTWAN WINTERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-03104-JMS-MPB |
| ) | |
| MEGAN JO ARMSTRONG, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S
UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

Plaintiff Emmanuel Winters, an Indiana Department of Correction ("IDOC") inmate at Westville Correctional Facility, filed this civil rights action against defendant Nurse Armstrong on July 24, 2019. Dkt. 1. Mr. Winters' allegations relate to events that occurred in 2019 while he was incarcerated at New Castle Correctional Facility ("New Castle"). Dkt. 6. Mr. Winters alleges that he arrived at New Castle in May 2019, after having had an ear infection, and that Nurse Armstrong did not arrange for him to receive any treatment. *Id.* Nurse Armstrong seeks summary judgment on this claim. For the reasons explained below, Nurse Armstrong's unopposed motion for summary judgment, dkt. [48], is **GRANTED**.

**I. Standard of Review**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit*." Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must inform the Court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the

nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

The Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Mr. Winters failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which

facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## II. Material Facts

The following facts, unopposed by Mr. Winters and supported by admissible evidence, are accepted as true.

### A. The Parties

Megan Armstrong is a licensed practical nurse ("LPN") in Indiana and was employed by Wexford of Indiana, LLC, at New Castle, during the period relevant to Mr. Winters' complaint. Dkt. 50-1, ¶¶ 1-2. As an LPN, her responsibilities "involved providing nursing services as directed by supervisors and onsite practitioners," including "carrying out the orders of the physicians, such as dispensing medications, scheduling appointments, or meeting with patients to discuss concerns of a medical nature." *Id.*, ¶ 3. Nurse Armstrong "did not have legal authority to diagnose patients or order specific medical care for any offender." *Id.*, ¶ 4. Nurse Armstrong conducted an intake assessment of Mr. Winters and treated him "on certain occasions" while he was at New Castle. *Id.*, ¶¶ 5, 9.

Emmanuel Winters currently is in IDOC custody. *See* dkt. 6. He was transferred from Miami Correctional Facility ("Miami") to New Castle on May 8, 2019. *Id.*, ¶ 7; dkt. 50-2 at 25-27.

### B. Mr. Winters' Medical Care at Miami

Mr. Winters was seen by a medical provider at Miami on April 25, 2019, to address complaints of an earache. Dkt. 50-2 at 28-30. The medical provider discovered that Mr. Winters

3

had excess earwax in both ears and flushed both ears to clean them. *Id.* Mr. Winters' right ear was infected, and the medical provider prescribed antibiotics to address the infection. *Id.*; Dkt. 50-3 at 10. Mr. Winters completed his cycle of antibiotic treatment on May 4, 2019, before his transfer to New Castle. Dkt. 50-2 at 28-30. The medical record does not indicate that the medical provider at Miami ordered additional or follow-up treatment beyond what Mr. Winters received on April 25, 2019. *Id.* ("Completed Orders (this encounter) Lavage both ears").

### C. Mr. Winters' Medical Care at New Castle

Approximately two weeks later, Nurse Armstrong saw Mr. Winters for the first time during his intake assessment at New Castle. Dkt. 50-2 at 18-24; dkt. 50-1, ¶ 9. She reviewed all intake information with Mr. Winters; took his vital signs; completed the inmate questionnaire; reviewed medications he was prescribed; performed alcohol, drug, suicide risk, and psychiatric screenings; and documented that Mr. Winters "appeared neat and clean" and "did not exhibit any symptoms or illness that required emergency medical care." Dkt. 50-1, ¶ 9. She also reviewed Mr. Winters' medical records, but she did not find outstanding orders for medical treatment for his ears, or any on-going orders for the issue. *Id.* She does not recall that Mr. Winters discussed his ear or related pain with her during this assessment. *Id.*, ¶ 10.

A different nurse evaluated Mr. Winters on July 16, 2019, after Mr. Winters complained of ear pain. Dkt. 50-2 at 15-17. His ears and ear canals were normal, and there were no signs of bulging or erythema. *Id.* The nurse nonetheless referred Mr. Winters for further evaluation. *Id.*

At a medical visit on August 9, 2019, a medical provider flushed Mr. Winters' ears and requested that a nurse repeat the irrigation of the left ear, using peroxide and warm water. *Id.* at 4-7. After this treatment, Mr. Winters no longer experiences migraines or ear pain but may have a "little hearing loss" because he can hear better out of his left ear than his right ear. Dkt. 50-3 at 9-

10. Mr. Winters is currently at Westville Correctional Facility and has not made any further request to get his ears checked since his transfer there. *Id.* at 10.

### III. Discussion

At all times relevant to Mr. Winters' claim, he was a convicted inmate, so his deliberate indifference claim is evaluated under the Eighth Amendment. *Estate of Clark v. Walker*, 865 F.3d 544, 546 n.1 (7th Cir. 2017). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc). Nurse Armstrong does not dispute that Mr. Winters' ear problems constitute a serious medical condition. Thus, the Court will focus on the second element: whether Nurse Armstrong was deliberately indifferent to Mr. Winters' condition.

The Court must examine a prison official's subjective state of mind to determine if he or she acted with deliberate indifference. *Petties*, 836 F.3d at 728. "For a prison official's acts or omissions to constitute deliberate indifference, a plaintiff does not need to show that the official intended harm or believed that harm would occur. But showing mere negligence is not enough." *Id.* Rather, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.*

The undisputed facts establish that Nurse Armstrong did not exhibit deliberate indifference to Mr. Winters' serious medical condition. In his deposition, Mr. Winters claims that he had medical appointments scheduled for his ear treatments, that he made Nurse Armstrong aware of his needed ear treatment, and that she "[f]ailed to document and order the stuff that [he] need[ed] for his ear treatment." Dkt. 50-3 at 5-6, 9. He claims that he continued to ask Nurse Armstrong

5

about the ear treatments during medical pass times, and she told him that she was waiting on supplies to arrive. *Id.* at 5-6. These claims are unsupported. The record indicates that the medical provider at Miami did not order further treatment for Mr. Winters' ear infection and excess earwax, *see* dkt. 50-2 at 28-30. Mr. Winters presents no evidence to dispute the medical records. Nor does he present evidence to dispute Nurse Armstrong's assertion that there were no "outstanding orders for specific treatment to [Mr. Winters'] ears as he had just recently received treatment from his previous physician" and that she "did not identify any on-going orders based on [her] review" of the medical record. Dkt. 50-1, ¶ 10. Because there were no orders for further treatment, Nurse Armstrong did not exhibit deliberate indifference by failing to note and implement such orders.

### IV. Conclusion

For the reasons explained above, the defendant's unopposed motion for summary judgment, dkt. [48], is **GRANTED**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 8/11/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

EMMANUEL ANTWAN WINTERS
242936
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com